UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CHARLES JONES,

       Plaintiff,

                                     CASE NO. 2:09-CV-11283
   v.                               JUDGE LAWRENCE P. ZATKOFF
                                     MAGISTRATE JUDGE PAUL KOMIVES

CORRECTIONAL OFFICER LEE,
CORRECTIONAL OFFICER MASSENGILL,
and MONROE COUNTY JAIL,,

       Defendants.

                                             /

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (docket #23)**

I.     RECOMMENDATION: The Court should grant in part defendants' motion for summary judgment and dismiss in part plaintiff's claims without prejudice. Specifically, the Court should dismiss without prejudice plaintiff's claim that he was deprived of his Bible for failure to exhaust pursuant to 42 U.S.C. § 1997e(a), and should grant summary judgment to defendants with respect to the remainder of plaintiff's claims.

II.    REPORT:

A.    *Procedural Background*

       Plaintiff Charles Jones, proceeding *pro se*, commenced this action on April 7, 2009, alleging various constitutional claims arising from his detention in the Monroe County Jail. Plaintiff filed an amended complaint on December 24, 2009. Plaintiff names as defendants Corrections Officer Tim Lee, Corrections Officer Massengill, and the Monroe County Jail. In his amended complaint, plaintiff alleges that upon his booking on January 25, 2008, defendant Lee inappropriately placed him on suicide watch, where he was required to sleep on a cold floor and eat without utensils. He

also alleges that defendant Lee punched him in the ribs for no reason. *See* Amended Compl., at 1-2. Plaintiff further alleges that on March 24, 2008, defendant Lee threatened to punch him again. *See id*. at 2-3. On March 25, 2008, plaintiff alleges, defendant Massengill accused him of stealing papers, threatened to put him on food loaf, and pushed him against a wall. Plaintiff alleges that on another occasion defendant Massengill took his Bible during a shake down. *See id*. at 3. Plaintiff further alleges generally, without reference to any specific defendant, that he was denied: (1) prescribed medication and treatment by mental health professionals; (2) exercise time; and (3) use of the law library. *See id*. at 3-4.

This matter is currently before the Court on defendants' motion for summary judgment, filed on April 29, 2010. Defendants argue that they are entitled to summary judgment because: (1) plaintiff was properly placed on suicide watch and in any event his placement on suicide watch does not rise to the level of a constitutional violation; (2) plaintiff's deliberate indifference medical claim fails as a matter of law; (3) plaintiff's excessive force claims fail as a matter of law; (4) plaintiff's claims against defendant Massengill fail as a matter of law; and (5) plaintiff's claims relating to the taking of his Bible, denial of exercise, and denial of law library use are unexhausted and not supported by the record. Plaintiff filed a response to the motion on May 17, 2010, and defendants filed a reply on June 3, 2010. Plaintiff filed a supplemental response on June 21, 2010, and defendants filed a reply to that response on June 24, 2010. Finally, on October 6, 2010, plaintiff filed a Motion to Give Notice, which by Order entered this date I have construed as another supplemental response to defendants' motion.

B.     *Summary Judgment Standard*

Under Rule 56, summary judgment should be granted "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."
FED. R. CIV. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury
could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d
444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "A fact
is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52
(citing *Anderson*, 477 U.S. at 248).  In deciding a motion for summary judgment, the Court must
view the evidence in a light most favorable to the non-movant as well as draw all reasonable
inferences in the non-movant's favor.  *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603,
613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of
material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451
(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  To meet this burden, the moving party
need not produce evidence showing the absence of a genuine issue of material fact.  Rather, "the
burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district
court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*,
477 U.S. at 325; *see also*, FED. R. CIV. P. 56(c)(1) (moving party may meet its burden by "citing to
particular parts of materials in the record" or by "showing that the materials cited do not establish
the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible
evidence to support the fact.").  "Once the moving party satisfies its burden, 'the burden shifts to the
nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell
Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio
Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).  To create a genuine issue of

material fact, however, the non-movant must do more than present some evidence on a disputed

issue.  As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving
> party for a jury to  return a verdict for that party.  If the [non-movant's] evidence is
> merely colorable, or is not significantly probative, summary judgment may be
> granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23;

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Thus, "[t]he

existence of a mere scintilla of evidence in support of the non-moving party's position will not be

sufficient; there must be evidence on which the jury could reasonably find for the non-moving

party."  *Sutherland*, 344 F.3d at 613.

C.      *Analysis*

        1.      *Claims Against Monroe County Jail*

        Defendants argue that plaintiff's claims against the Monroe County Jail must be dismissed,

because the Jail is not a proper defendant.  The Court should agree.  It is well established that "[a]

county jail is not a suable entity within the meaning of 42 U.S.C. § 1983."  *Gross v. Evans*, No.

06-CV-13065 , 2006 WL 2419195, at *2 (E.D. Mich. Aug. 22, 2006) (Zatkoff, J.) (citing *Bradford*

*v. Gardner*, 578 F. Supp. 382, 383 (E.D. Tenn.1984).  Even construing plaintiff's complaint liberally

as properly naming the County itself, *see Blackburn v. Grai*, No. 08-11597, 2008 WL 5188796, *2

(E.D. Mich. Dec.10, 2008) (Hood, J.), the County is entitled to summary judgment.  The Supreme

Court has recently explained the standards when a plaintiff asserts a § 1983 claim against a

municipality:

> A municipality or other local government may be liable under this section if
> the governmental body itself "subjects" a person to a deprivation of rights or
> "causes" a person "to be subjected" to such deprivation. *See Monell v. New York City*
> *Dept. of Social Servs.*, 436 U.S. 658, 692 (1978).  But, under § 1983, local

governments are responsible only for "their own illegal acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (citing *Monell*, 436 U.S., at 665–683). They are not vicariously liable under § 1983 for their employees' actions. *See id.*, at 691; *Canton [v. Harris]*, 489 U.S. [378], at 392 [(1989)]; *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997) (collecting cases).

Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. *Monell*, 436 U.S., at 691; *see id.*, at 694. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. *See ibid.*; *Pembaur*, *supra*, at 480-481; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970). These are "action[s] for which the municipality is actually responsible." *Pembaur*, *supra*, at 479–480.

In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 822-823 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*"). To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Canton*, 489 U.S., at 388. Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.*, at 389.

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan Cty.*, 520 U.S., at 410. Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. *Id.*, at 407. The city's "policy of inaction" in light of notice that its program will cause constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution." *Canton*, 489 U.S., at 395 (O'Connor, J., concurring in part and dissenting in part). A less stringent standard of fault for a failure-to-train claim "would result in de facto respondeat superior liability on municipalities . . . ." *Id.*, at 392; *see also Pembaur*, *supra*, at 483 (opinion of Brennan, J.) ("[M]unicipal liability under § 1983 attaches where–and only where–a deliberate choice to follow a course of action is made from among various alternatives by [the relevant] officials . . .").

*Connick v. Thompson*, 131 S. Ct. 1350, 1359-60 (2011) (parallel citations omitted).

Here, plaintiff's amended complaint does not allege any facts upon which a jury could conclude that the County was itself deliberately indifferent to his constitutional rights. He does not allege that any of the constitutional violations set forth in his complaint resulted from inadequate training or policies, nor does he point to any other circumstances in his various responses suggesting that the County itself was responsible for the alleged constitutional violations. Accordingly, the Court should grant summary judgment to the Monroe County Jail.

2.    *Placement on Suicide Watch*

Plaintiff first claims that he was improperly placed on suicide watch by defendant Lee when he was booked into the Monroe County Jail. Defendants contend that plaintiff's placement on suicide watch was a result of his own statements regarding his suicidal ideation and mental problems. Plaintiff denies that he made these statement to defendant Lee. The parties' factual disagreement, however, is irrelevant. Temporary placement on suicide watch, even when not necessary, does not implicate a liberty interest protected by the Due Process Clause nor does it amount to cruel and unusual punishment under the Eighth Amendment. *See Sheldon v. Smith County Jail Medical Clinic*, No. 6:08cv68, 2010 WL 1658217, at *4 (E.D. Tex. Apr. 22, 2010); *Marshall v. Burden*, No. 5:09CV00128, 2010 WL 670079, at *4-*5 (E.D. Ark. Feb. 22, 2010); *Starks v. Couch*, No. 08-cv-407, 2009 WL 331357, at *2 (S.D. Ill. Feb. 11, 2009); *Reynolds v. Mattson*, No. 2:07-CV-59, 2008 WL 2704750, at *1 (W.D. Mich. July 9, 2008); *Cherer v. Frazier*, No. 2:06-cv-00502, 2007 WL 2406844, at *5-*6 (D. Nev. Aug. 16, 2007), *aff'd*, ___ Fed. Appx. ___, 2012 WL 66842 (9th Cir. Jan. 10, 2012). In short, "there is no constitutional right to avoid being placed on suicide watch." *Starks*, 2009 WL 331357, at *2. Accordingly, the Court should conclude that defendants are entitled to summary judgment on this claim.

3.      *Assault and Threats*

Plaintiff next alleges that defendant Lee assaulted him by punching him in the ribs, and that defendant Massengill assaulted him by pushing him against the wall.  Plaintiff also alleges that defendant Massengill threatened him, and that defendant Lee verbally abused him.  The Court should conclude that defendants are entitled to summary judgment with respect to these claims.

Because plaintiff was a pretrial detainee, his excessive force claim is governed by the Due Process Clause of the Fourteenth Amendment, rather than by the Fourth Amendment, which protects free citizens from excessive force at the hands of the police, or by the Eighth Amendment, which protects convicted prisoners from cruel and unusual punishment.  *See Leary v. Livingston County*, 528 F.3d 438, 443 (6th Cir. 2008) (discussing *Graham v. Connor*, 490 U.S. 386, 394, 395 n.10 (1989)).  As the Sixth Circuit observed, "there is room for debate over whether the Due Process Clause grants pretrial detainees more protections than the Eighth Amendment does[.]" *Id*.  However, as in *Leary*, the Court need not resolve exactly what protections beyond the Eighth Amendment the Due Process Clause may provide a pretrial detainee, because plaintiff's claims against defendants fail under any standard.

Under either the Eighth Amendment or the Due Process Clause, "an excessive-force claimant must show something more than *de minimis* force."  *Leary*, 528 F.3d at 483 (citing *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (Eighth Amendment); *Bell v. Wolfish*, 441 U.S. 520, 539 n. 21 (1979) (Due Process Clause)).  As the Supreme Court explained, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."  *Hudson*, 503 U.S. at 9 (internal quotation omitted).  Thus, "[f]ederal courts have routinely held that a single push, shove, punch, or blow by a prison guard does not rise to the

7

level of a constitutional violation.  The same holds true even when the push or shove appears to be unnecessary." *Stanley v. Smith*, No. 2:07-CV-139, 2008 WL 4534434, at \*6 (W.D. Mich. Sept. 29, 2008) (citations omitted) (citing *Hampton v. Alexander*, No. 95-3457, 1996 WL 40237 (6th Cir. Jan. 31, 1996);  *Neal v. Miller*, 778 F. Supp. 378, 383-384 (W.D. Mich. 1991) (collecting cases)). Plaintiff's claim that defendant Massengill pushed him against the wall one time is clearly the type of *de minimis* use of force which *Hudson* makes clear does not rise to the level of a constitutional violation.  *See DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *Show v. Patterson*, 955 F. Supp. 182, 193 (S.D.N.Y. 1997).  Likewise, although more significant that a push, defendant Lee's alleged punch which caused nothing more than a bruise constitutes a *de minimis* use of force.  *See DeArmas v. Jaycox*, No. 92 Civ. 6139, 1993 WL 37501, at \*4 (S.D.N.Y. Feb. 8, 1993) (single punch that resulted in bruise and single kick constituted *de minimis* force), *aff'd*, 14 F.3d 591 (2d Cir. 1993); *Olsen v. Coleman*, 804 F. Supp. 148, 150 (D. Kan. 1992) (single blow to the head causing contusion constituted *de minimis* force). Accordingly, the Court should conclude that defendants are entitled to summary judgment on plaintiff's assault claims.

Likewise, the Court should conclude that defendants are entitled to summary judgment on plaintiff's threats and verbal harassment claims.  It is well-established that threats and harassment by prison officials against inmates do not rise to the level of a constitutional violation unless they are so extreme as to constitute cruel and unusual punishment.  *See, e.g.*, *Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992); *Thomas v. Hill*, 963 F. Supp. 753, 755 (N.D. Ind. 1997) (citing cases).  Plaintiff's allegations of verbal threats or harassment by defendants Lee and Massengill are insufficient to establish a

8

constitutional violation, and thus defendants are entitled to summary judgment on these claims.

> 4.    *False Accusation*

Plaintiff also contends that defendant Massengill falsely accused him of ripping out pages from a book in the law library.  The Court should conclude that defendant Massengill is entitled to summary judgment on this claim.

"A prisoner has no constitutionally protected immunity from being falsely accused of misconduct.  The prisoner only has a right to due process of law during the disciplinary proceedings against him concerning the allegedly false misconduct charges." *Riley v. Church*,  874 F. Supp. 765, 768 (E.D. Mich. 1994) (Gadola, J.) (citations omitted), *aff'd,* 81 F.3d 161 (6th Cir. 1996); *accord Cromer v. Dominguez*, 103 Fed. Appx. 570, 573 (6th Cir. 2004); *Jackson v. Hamlin*, 61 Fed. Appx. 131, 132 (6th Cir. 2003).  Plaintiff does not allege that he was denied a fair hearing on the accusation.  Nor has petitioner stated a due process claim based on any punishment he may have received as a result of the allegedly false charge.  To show that his due process rights were violated plaintiff must show that any discipline "impose[d] [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  Plaintiff does not allege that he received any punishment as a result of defendant Massengill's allegedly false charge, much less that the punishment imposed an atypical and significant hardship on plaintiff.  Accordingly, the Court should conclude that defendants are entitled to summary judgment on this claim.

> 5.    *Taking of Bible*

Plaintiff also contends that during a cell search defendant Massengill took his Bible.  This claim must be dismissed without prejudice based on plaintiff's failure to exhaust his administrative

remedies.  The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  In his supplemental brief, plaintiff concedes that he did not pursue a grievance with respect to the Bible issue and that this claim is unexhausted.  Accordingly, the Court should dismiss this claim pursuant to § 1997e(a) without prejudice to plaintiff bringing the claim anew after it has been exhausted.[1]

> 7.      *Denial of Exercise and Medical Care*

Plaintiff next contends that he was denied exercise and appropriate medical care while housed in the Monroe County Jail.  Plaintiff does not allege, however, that defendants Lee and Massengill themselves deprived him of exercise or medical care, nor does he make any such argument in his various briefs.  Plaintiff's claims with respect to exercise and medical care are generalized grievances, not directed against either of the named plaintiffs individually.  It is well established that liability in a § 1983 action cannot be based on a theory of *respondeat superior*.  *See*

---

[1]Defendants also contend that plaintiff's denial of exercise and access to courts claims are unexhausted.  Plaintiff does not concede exhaustion with respect to these claims, and attaches kites which he contends exhausted these issues.  Because, as discussed below, defendants are entitled to summary judgment on the merits of plaintiff's claims, the Court need not resolve the exhaustion issue. *See* 42 U.S.C. § 1997e(c)(2) (" In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.").  Although § 1997e(c)(2) addresses dismissal of a claim that fails to state a claim on its face, § 1997e(c)(2) also permits a court to grant summary judgment to the defendant on the merits notwithstanding a failure to exahust. *See Clark v. Caruso*, No. 09-CV-10300, 2010 WL 746417, at *10 (E.D. Mich. Mar. 2, 2010) (Borman, J., adopting report of Komives, M.J.) (citing cases).  Because defendants clearly are entitled to summary judgment on the merits of plaintiff's claims, the Court need not address the exhaustion issue.  Plaintiff's claim relating to the Bible, however, cannot be dismissed on the merits under § 1997e(c)(2) because, if true, it arguably states a claim for relief under the First Amendment. *See Johnson v. Boyd*, 676 F. Supp. 2d 800, 809 (E.D. Ark. 2009).

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Monell v. New York City Dep't of Social Servs.*, 436

U.S. 658, 691 (1978).  "To recover damages under 42 U.S.C. § 1983, a plaintiff must establish a

defendant's personal responsibility for the claimed deprivation of a constitutional right."  *Diebitz*

*v. Arreola*, 834 F. Supp. 298, 304 (E.D. Wis. 1993).  "Because vicarious liability is inapplicable to

*Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the

official's own conduct, has violated the Constitution."  *Iqbal*, 129 S. Ct. at 1948.  In other words,

in order to state a claim under § 1983 "[a] plaintiff must allege facts, not simply conclusions, that

show that an individual was personally involved in the deprivation of his civil rights.  Liability under

§ 1983 must be based on the personal involvement of the defendant."  *Barren v. Harrington*, 152

F.3d 1193, 1194 (9th Cir. 1998) (per curiam); *see also*, *Carr v. Parker*, No. 98-6395, 1999 WL

1206879, at \*1 (6th Cir. Dec. 9, 1999); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th

Cir. 1998).

Here, plaintiff makes only a generalized claim that he was denied adequate exercise and

medical care while detained at the Jail.  He makes no specific allegations that defendants Lee and

Massengill were responsible for the denial of exercise or medical care, or what role they may have

had in providing him access to exercise or medical care.  On the contrary, plaintiff's responses to

defendants' motion place the blame with respect to these matters on other officials.  *See, e.g.*, Pl.'s

Resp., at 4 (emphasis added) ("Plaintiff was denied his proper medication even after he showed

proof *to the doctor* of his prescribed medication."); *id*. at 5 (emphasis added) ("Plaintiff's numerous

requests to see mental health surely shows *Monroe County Jail's medical department* had a

deliberate indifference to Plaintiff['s] serious mental illness); Pl.'s Supp. Resp., at 2 (emphasis

added) ("[A]fter the third day *medical* just stop[ped] all of Plaintiff's medication . . . ."); Mot. to

Give Notice, at 2 (stating that examining nurse denied plaintiff access to mental health staff); *id*. at

3-4 (stating that nurse and doctor denied plaintiff medication and mental health services). Plaintiff's

generalized allegations are insufficient to show that defendants Lee and Massengill were themselves

responsible for the denial of exercise and medical care. *See Telles v. Stanislaus County Sheriff's*

*Dep't*, No. 1:10-cv-01911, 2011 WL 2036962, at \*6 (E.D. Cal. May 24, 2011); *Atwell v. Lavan*, 557

F. Supp. 2d 532, 546 (M.D. Pa. 2008), *aff'd*, 366 Fed. Appx. 393 (3d Cir. 2010). Accordingly, the

Court should conclude that defendants are entitled to summary judgment on plaintiff's exercise and

medical care claims.

        8.     *Access to Courts*

Finally, plaintiff alleges that he was denied access to the law library. In response to

defendants' motion for summary judgment, plaintiff also asserts that some of his legal papers were

confiscated. Even assuming that these allegations are true, defendants are entitled to summary

judgment.

Prisoners have a fundamental right of access to the courts. *See Bounds v. Smith*, 430 U.S.

817, 821 (1977). "The right springs from the Due Process Clauses of the Fifth and Fourteenth

Amendments and the right of petition found in the First Amendment," *Hodge v. Prince*, 730 F. Supp.

747, 751 (N.D. Tex. 1990), as well as from the Privileges and Immunities Clause of Article IV. *See*

*Chambers v. Baltimore and Ohio R.R.*, 207 U.S. 142, 148 (1907). A prisoner's access to the courts

must be adequate, effective and meaningful. *See Bell v. City of Milwaukee*, 746 F.2d 1205, 1261

(7th Cir. 1984); *Ryland v. Shapiro,* 708 F.2d 967, 972 (5th Cir. 1983). A prisoner asserting a denial

of access to courts claim must satisfy the constitutional standing requirement by alleging an actual

injury. *See Lewis v. Casey,* 518 U.S. 343, 349, 351-53 (1996). To meet this requirement, a plaintiff

must show that the actions of the prison officials "hindered the prisoner's efforts to pursue a

nonfrivolous claim." *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996); *accord Lewis*, 518

U.S. at 353; *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996); *Stewart v. Block*, 938 F. Supp.

582, 586 (C.D. Cal. 1996) (plaintiff must show "a specific instance in which he was actually denied

access to the courts.") (internal quotation omitted).  Further, "the injury requirement is not satisfied

by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354.  The right of access to the courts

"does not guarantee inmates the wherewithal to transform themselves into litigating engines," and

thus the right is limited to safeguarding prisoners' ability "to attack their sentences, either directly

or collaterally, and in order to challenge the conditions of their confinement." *Id.* at 355.  In other

words, "a prisoner's right to access the courts extends to direct appeals, habeas corpus applications,

and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir.1999) (en banc).

Under *Lewis,* dismissal is appropriate where a prisoner fails to allege a specific, litigation-related

detriment resulting from the prison official's conduct.  *See Pilgrim v. Littlefield*, 92 F.3d 413, 416

(6th Cir. 1996).

> As the Supreme Court has explained, to establish an access to courts claim,
>
> the named plaintiff must identify a nonfrivolous, arguable, underlying claim . . . .  It
> follows that the underlying cause of action, whether anticipated or lost, is an element
> that must be described in the complaint, just as much as allegations must describe the
> official acts frustrating the litigation.  It follows, too, that when the access claim (like
> this one) looks backward, the complaint must identify a remedy that may be awarded
> as recompense but not otherwise available in some suit that may yet be brought.
> There is, after all, no point in spending time and money to establish the facts
> constituting denial of access when a plaintiff would end up just as well off after
> litigating a simpler case without the denial-of-access element.

*Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

Here, plaintiff has failed to allege, or provide evidence of, any specific, litigation-related

detriment resulting from defendant Cooke's alleged actions, nor has he identified "a nonfrivolous, arguable, underlying claim," *Christopher*, 536 U.S. at 415, lost by defendant's actions.  In his amended complaint, he alleges only vaguely that he was "denied use of the law library to research." In his various responses, plaintiff does not provide any information regarding the nature of the underlying litigation or the bases on which those matters were resolved against him, again making only generalized assertions that his access to courts was hindered.  *See, e.g.*, Pl.'s Resp., at 7 ("Destruction of Plaintiff's legal papers . . . result[ed] . . . in an impediment to Plaintiff['s] access to the court of ongoing court cas[e] infringed upon Plaintiff's right to access the Courts."); Pl.'s Supp. Resp., at 3 ("When Plaintiff was in Monroe on a writ for 29 days he was denied to use Law Library, and a[n] ink pen and was told he cannot have any copies made to access the courts."); Mot. to Give Notice, at 5-6 ("Plaintiff was denied to use Law Library [until] he put in a grievance on the issue.  Then when he finally got to go there was no books and the computer would not work properly you could not look up any laws or anything.").  Plaintiff has failed to provide any allegations or evidence that, because of defendants' actions, he lost a nonfrivolous claim challenging his conviction or conditions of confinement, as is his burden.  *See Christopher*, 536 U.S. at 415. Accordingly, the Court should grant summary judgment to defendants on plaintiff's access to courts claims.

D.     *Conclusion*

In view of the foregoing, the Court should conclude that plaintiff's claim alleging that defendant Massengill confiscated his Bible is unexhausted, and the Court should therefore dismiss that claim without prejudice pursuant to 42 U.S.C. § 1997e(a).  In all other respects, the Court should conclude that there are no genuine issues of material fact and that defendants are entitled to

judgment as a matter of law, and the Court should accordingly grant defendants' motion for summary judgment with respect to all of plaintiff's claims except the claim relating to the confiscation of the Bible.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/Paul J. Komives
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE
Dated: March 2, 2012

**#09-11283**
**Jones v. Lee, et al**


I hereby certify that a copy of this document was sent to

**Charles Jones**
657191
5156 William Fox Lane
Ottawa Lake, MI 49267

and parties of record on March 2, 2012 by electronic and/or U.S. Mail.

S/Michael Williams
Relief Case Manager for the Honorable
Paul J. Komives